**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Thomas Rhodes,<br><br>                Plaintiff,<br><br>v.<br><br>Ricardo E Chavez, et al.,<br><br>                Defendants. | No. CV-12-01971-PHX-DGC<br><br>**ORDER** |

Plaintiff and Defendants have filed cross motions for summary judgment. Defendants claim that the Court lacks personal jurisdiction over Defendants Watts and Johnson and that all Defendants are entitled to qualified immunity. Doc. 54. Defendants also argue that Plaintiff's complaint does not plead anything beyond ordinary negligence, which they assert is not actionable under *Bivens*. *Id.* at 3. Plaintiff does not challenge the statement of facts set out by Defendants, but argues that he is entitled to summary judgment even in light of those facts. Doc. 59. The motions are fully briefed and no party requests oral argument. The Court will grant summary judgment in favor of Defendants Chavez, Johnson, and Watts, and deny summary judgment in favor of Plaintiff and Defendant Hoffman.

**I.     Background.**

On October 24, 1990, Plaintiff David Rhodes received early release from an 11-year sentence imposed in the U.S. District Court for the District of Nevada. Doc. 55, ¶ 7. He had 1,681 days remaining on his sentence. *Id.* On July 30, 1991, the United States

Parole Commission ("USPC") issued a warrant for Plaintiff's arrest based on violation of his early release terms due to newly filed federal drug charges. *Id.*, ¶ 8. Plaintiff was arrested by the U.S. Marshals on the USPC warrant on September 25, 1991, although the U.S. Marshals actually executed the warrant on October 2, 1991.[1] *Id.*, ¶ 9. On October 31, 1991, the USPC issued a Notice of Action stating that Plaintiff was released from custody on the warrant and placed on detainer pending disposition of the new drug charges. *Id.*, ¶ 10. Almost two years later, on August 13, 1993, Plaintiff was found guilty on the drug charges after a jury trial and sentenced to 20 years. The trial and sentencing occurred in the U.S. District Court for the District of Wyoming. *Id.*, ¶ 11. Following his conviction and sentence, the Bureau of Prisons ("BOP") granted Plaintiff credit on the drug sentence for time served since his September 25, 1991 arrest, resulting in a projected release date of February 25, 2009. *Id.*, ¶¶ 12, 16.

Because his parole violation was still pending and had not been resolved, Plaintiff filed a habeas petition in the U.S. District Court for the District of Colorado. On March 28, 1994, Magistrate Judge Richard M. Borchers found that Plaintiff's September 25, 1991 arrest was solely the result of the USPC's warrant, and ordered the USPC to hold a revocation hearing within 60 days. Doc. 34-1 at 47, 49. He also recommended that the USPC give Plaintiff credit for every day served since his arrest if his parole was revoked. *Id.*

The USPC held the revocation hearing on June 23, 1994, revoked Plaintiff's parole, and required him to complete the remaining 1,681 days of his 11-year sentence. Doc. 55, ¶ 14. On May 2, 1996, the USPC issued a Notice of Action stating that Plaintiff would receive credit for time served from the date of his original arrest on September 25, 1991. *Id.*, ¶ 15. BOP completed a new sentence computation, commencing the release violator term on October 2, 1991 – the day the U.S Marshals executed the warrant – and granting Plaintiff credit for time served since his arrest. *Id.*, ¶ 16. At the same time, BOP

---

[1] The parties' submissions are inconsistent on whether the arrest occurred on September 23 or 25, 1991. This issue is not important, and the Court will use the latter date throughout this order.

1 removed the credit for time served from the 20-year drug sentence. *Id.* As a result,
2 Plaintiff's release date for the drug offense was changed to March 2, 2011. *Id.*

3 When Plaintiff learned of this change several years later, he pursued
4 administrative remedies within BOP, seeking to reapply the time-served credit to the 20-
5 year drug sentence. *Id.*, ¶¶ 25-26. Plaintiff alleged that his sentence computation was
6 incorrect and should be recalculated because the credit for time served was improperly
7 removed from his 20-year sentence and applied to his sentence for violating parole.
8 Doc. 34-1 at 92.

9 Defendant Chavez was the warden of the federal facility in Phoenix, Arizona,
10 where Plaintiff was housed when he pursued administrative remedies. Chavez was not
11 involved in the sentence calculation that resulted in Plaintiff's time-served credit being
12 transferred from his 20-year sentence, nor did he supervise that effort. Chavez had no
13 authority to change the sentence calculation. Chavez's only involvement was to sign a
14 response to Plaintiff's appeal of his administrative complaint – a response prepared by
15 Hoffman. The response was issued on July 21, 2009, some 13 years after Plaintiff's
16 time-served credit had been transferred. It denied Plaintiff's appeal and stated that his
17 sentence calculation was correct. Docs. 1, ¶ 37; 55, ¶¶ 20-22, 25.

18 Defendant Joel Hoffman served as a Supervisory Correctional Systems Specialist
19 at the BOP in Phoenix. In 2009, Hoffman was tasked with responding to prisoners'
20 administrative filings regarding sentence computations. Although the computations were
21 made at the BOP Designations and Sentence Computation Center ("DSCC") in Grand
22 Prairie, Texas, Hoffman was tasked with drafting a response to Plaintiff's request for
23 administrative remedies regarding the accuracy of his computation. Doc. 55, ¶ 3.

24 Defendant Watts served as the BOP National Inmate Appeals Coordinator in
25 Washington, D.C. As part of his duties, he signed all responses to inmate administrative
26 remedy requests filed at the national level. Watts was not personally involved in
27 preparing or auditing sentence computations. Other staff members reviewed sentence
28 computations and drafted responses for Watts to sign. Watts signed a response denying

the appeal of one of Plaintiff's administrative complaints. Docs. 1, ¶ 39; 55, ¶¶ 4, 23.

Defendant Johnson served as a Correctional Program Specialist at the BOP office in Grand Prairie, Texas. After Plaintiff had exhausted his administrative remedies, he filed a habeas petition on July 23, 2009. In response to this court action, Johnson was assigned to audit Plaintiff's sentence. Johnson determined that the sentence computation was correct and signed a declaration to that effect that was filed in the habeas action. Johnson was not involved in the original decision to transfer Plaintiff's time-served credit from his 20-year sentence to his parole violation sentence. Docs. 1, ¶ 40; 55, ¶¶ 5, 24.

Plaintiff sues each of these defendants as individuals, seeking to recover $1,131,000 from them personally. Doc. 1 at 15-16. Although Plaintiff also has alleged an official capacity claim against Defendants, that claim is not available in a *Bivens* action, as explained below.[2]

**II.   Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.[3]

---

[2] Plaintiff filed this *Bivens* action on September 17, 2012, and the Court dismissed it as barred by the statute of limitations. The Ninth Circuit reversed the Court's decision and remanded the case for further proceedings on the merits.

[3] Plaintiff claims that arguments made in Defendants' motions for summary judgment are untimely, with the exception of lack of personal jurisdiction and qualified immunity. Doc. 58 at 2. The Court does not agree, but finds this argument inapposite since the ruling in this case is based primarily on personal jurisdiction and qualified immunity.

- 4 -

### III. Leave to Amend.

Leave to amend should be granted freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff filed his motion to amend on August 25, 2016, some six days after the Court's deadline for amending pleadings. *See* Doc. 52. Defendants correctly note that extensions of a case management deadline may be granted only for good cause. In this case, however, Plaintiff is proceeding *pro se*, he seeks to amend his complaint only slightly to specify the level of culpability with which Defendants allegedly acted, this is the first time Plaintiff has sought leave to amend, discovery has not commenced, and there is no evidence of an improper motive. The Court will grant leave to amend.[4]

### IV. Plaintiff's Official Capacity Claims.

Plaintiff's complaint can be read as suing Defendants in their official and individual capacities. As Defendants correctly note, however, official capacity claims may not be brought in a *Bivens* action. *See Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996) ("a *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity."). The Court will grant summary judgment on Plaintiff's official capacity claims.

### V. Nature of Plaintiff's Claims.

Before addressing the parties' arguments, the Court pauses to clarify the nature of Plaintiff's claims. Plaintiff sues Defendant Chavez for "violating Plaintiff's Fifth Amended right to due process." Doc. 1, ¶ 37. Plaintiff does not assert a procedural due process claim. He argues instead that Defendant's actions denied him "substantive" due process. Doc. 58 at 4, 10. Plaintiff cites no authority to suggest that he has a substantive due process claim for his alleged injury, but Defendants "concede that a due process violation may occur where a defendant causes a prisoner to remain confined past his proper release date." Doc. 54 at 8.

Plaintiff describes the alleged violation in these terms: Defendants "failed to carry

---

[4] The Court recognizes that Plaintiff has not complied fully with local rules, but, considering his pro se status, will not exercise its discretion to deny leave to amend on this basis.

- 5 -

1   out their duty to review a sentence when it is brought to their attention that a possible
2   error existed, and to take the necessary steps to correct the mistaken sentence
3   computation." Doc. 58 at 7. Plaintiff asserts that Defendants' "failure to take proper
4   corrective action creates their liability, especially after Plaintiff explained to each where
5   and how the errors had been made." *Id.* at 10.

6   **VI.   Personal Jurisdiction.**

7   "Federal courts ordinarily follow state law in determining the bounds of their
8   jurisdiction over persons." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation
9   omitted). Arizona has authorized its courts to exercise jurisdiction to the maximum
10  extent permitted by the Due Process Clause of the U.S. Constitution. *See* Ariz. R. Civ. P.
11  4.2(a). Thus, courts in the District of Arizona may exercise jurisdiction over a defendant
12  who is not physically present in Arizona if the defendant has minimum contacts with the
13  State, such that the suit can be maintained without offending traditional notions of fair
14  play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

15  The Court may assert general personal jurisdiction over a defendant whose
16  activities in the forum state are substantial or continuous and systematic, even if the
17  plaintiff's claims are unrelated to those activities. *See Haisten v. Grass Valley Med.*
18  *Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986) (citing *Data Disc, Inc. v.*
19  *Syst. Tech. Assoc., Inc.*, 557 F.2d 1289, 1287 (9th Cir. 1977)). Alternatively, specific
20  personal jurisdiction can be established when the defendant purposely directed conduct at
21  the forum state, the plaintiff's claim arises out of the defendant's forum-related activities,
22  and the exercise of personal jurisdiction comports with fair play and substantial justice.
23  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011). The
24  first requirement – purposeful direction – can be satisfied when a defendant (1) commits
25  an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in
26  the forum. *Id.* This test is sometimes referred to as the "effects test." *Id.*

27  The effects test does not "stand for the broad proposition that a foreign act with
28  foreseeable effects in the forum state always gives rise to specific jurisdiction." *Wash.*

*Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citation and quotation marks omitted). Nor does the effects test mean that specific jurisdiction may be based solely on a defendant's knowledge that the subject of his tortious activity resides in a particular state. *See Walden*, 134 S.Ct. at 1125. The Court must focus on the "'relationship among the defendant, the forum, and the litigation' [which] is the essential foundation of in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S.Ct. at 1125.

Defendants assert that the Court lacks jurisdiction over Defendants Johnson and Watts because they do not have sufficient minimum contacts with Arizona to justify personal jurisdiction. There is no basis to assert general personal jurisdiction over these Defendants because neither is a citizen of Arizona. Johnson is a resident of Texas and Watts is a resident of Washington D.C. Nor does Plaintiff allege any facts showing that Johnson or Watts had any substantial, continuous, or systematic contacts with Arizona. The Court therefore will confine its analysis to specific jurisdiction.

Defendants argue that Watts and Johnson's only contact with Arizona "stems from the fact that Plaintiff was housed at a BOP facility in Arizona during the final days of his incarceration." Doc. 54 at 5. In support, Defendants cite the Supreme Court's decision in *Walden v. Fiore*. The plaintiffs in *Walden* brought a *Bivens* claim against a Georgia defendant in Nevada federal court, asserting that the defendant engaged in tortious conduct when he seized their money in Georgia with knowledge that the plaintiffs were travelling to Nevada. 134 S. Ct. at 1117. The Supreme Court held that the Nevada court could not exercise personal jurisdiction over the Georgia defendant because such jurisdiction must be based on contacts the defendant himself created with the forum, not on the plaintiffs' contacts with the forum, and the defendant in *Walden* initiated no contacts with Nevada. *Id.* at 1122. It was not enough, the Court held, that the defendant

- 7 -

took actions toward a plaintiff who had contacts with Nevada, nor that the defendant knew his actions could have an effect in Nevada. A court may not exercise personal jurisdiction when the plaintiff is the "only link between the defendant and the forum." *Id.*

Plaintiff has not shown that Watts and Johnson have sufficient contacts with Arizona for specific jurisdiction. Plaintiff identifies no contacts these Defendants initiated with the State in connection with this case. He presents no evidence that they visited the State or directed communications there. He does not allege that they reached out in some way to avail themselves of the privilege of doing business in Arizona. The only actions Plaintiff identifies are Defendants' allegedly erroneous decisions on the length of his sentence. Doc. 58 at 5-6. But the actions of Watts and Johnson in connection with Plaintiff's sentence calculation were done solely in their capacity as BOP employees, and solely in their non-Arizona offices. Their actions, even if erroneous, concerned the amount of time Plaintiff was to serve on a Wyoming sentence and a Nevada sentence, in light of his parole revocation by the USPC, made while Plaintiff was housed in California, and in part due to an order from a Colorado federal judge. The original decision had nothing to do with Arizona, and the years-later review of it by Watts and Johnson did not rely upon Arizona law or facts.

The only possible connection with Arizona was the fact that Plaintiff was housed there by the BOP when Watts and Johnson took their actions. But just as the plaintiffs' Nevada connections were insufficient to confer personal jurisdiction over a Georgia defendant in *Walden*, Plaintiff's Arizona connection is insufficient to confer personal jurisdiction over Watts and Johnson. Even if Watts and Johnson knew Plaintiff was housed by BOP in Arizona – something Plaintiff does not establish – that fact would not subject them to personal jurisdiction. In *Walden*, the defendant seized money from the plaintiffs in Georgia with knowledge that they were travelling to Nevada. The Supreme Court held that this knowledge was not enough for specific personal jurisdiction.[5]

---

[5] Although it is not particularly relevant in light of *Walden*, the Court notes that Plaintiff was never domiciled in Arizona. Many courts apply a rebuttable presumption that a prisoner retains the domicile he enjoyed before imprisonment. *See Sullivan v.*

The Court concludes Defendants Watts and Johnson are not subject to personal jurisdiction, and will dismiss the claims against them.[6]  Because Defendants Chavez and Hoffman remain in the case, the Court will address Defendants' remaining arguments.

**VII.   Qualified Immunity.**

Qualified immunity applies to conduct of government officials performing discretionary functions unless the officials' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  The purpose of qualified immunity is to allow officials to "reasonably . . . anticipate when their conduct may give rise to liability for damages."  *Davis v. Scherer*, 468 U.S. 183, 195 (1984).  When determining whether government officials are entitled to qualified immunity, courts apply a two part test:

> (1) Whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right;
>
> (2) If so, whether the right was "clearly established" at the time of the defendant's alleged misconduct?

*Saucier v. Katz*, 533 U.S. 194, 199 (2001); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).   Defendants argue that Plaintiff cannot satisfy the first requirement – violation of a constitutional right – because his sentence was correctly computed.

**A.   Was Plaintiff's Sentence Correctly Calculated?**

On this record, the Court is not persuaded that Plaintiff's sentence was correctly calculated.  The plain language of the statutory text and case law suggest that once credit

---

*Freeman*, 944 F.2d 334, 337 (7th Cir. 1991); *Stifel v. Hopkins*, 477 F.2d 1116, 1124 (6th Cir. 1973);*United States v. Arango*, 670 F.3d 988 (9th Cir. 2012). Applying the presumption, Plaintiff has failed to establish that he was an Arizona domiciliary when the alleged torts giving rise to this *Bivens* action took place.  Plaintiff states that he is now in business in California.  Doc. 60, ¶ 15.

[6] Plaintiff argues that the Court need not look to Arizona law for personal jurisdiction purposes in light of Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Doc. 58 at 7.  But even if the Court were to look to that rule, it requires courts to exercise jurisdiction "consistent with the United States Constitution and laws," Fed. R. Civ. P. 4(k)(2)(B), and *Walden* established the standard of exercising personal jurisdiction under the Constitution.

has been applied to one sentence, it may not be applied to another. 18 U.S.C. § 3585(b). According to the Ninth Circuit:

> 18 U.S.C. § 3585(b) allows the BOP to grant a federal prisoner credit for time spent in state or federal custody before imposition of his federal sentence, but only if that term of pre-sentence imprisonment *has not been credited against another sentence*. . . . Here, however, Schleining's 21–month term in state custody before imposition of his federal sentence *was* credited against his state sentence. Therefore, the BOP would not have been able to credit that time against Schleining's federal sentence; that triggered Judge Molloy's authority, under U.S.S.G. § 5G1.3(b)(1), to adjust Schleining's federal sentence downward from 115 months to 94 months, in recognition of the 21 months he served in state prison on related charges.

*Schleining v. Thomas*, 642 F.3d 1242, 1245 n.2 (9th Cir. 2011) (internal quotation marks and citation omitted).

Defendants argue that they were required to apply the time credit to Plaintiff's parole violation term by the order from Judge Borchers. Doc. 54 at 10. According to Defendants, Judge Borchers recommended that Plaintiff be given credit on his parole violation sentence for all time already served, requiring BOP to remove the credit from the 20-year sentence in order to avoid granting him double credit for time served in violation of § 3585(b). But Judge Borchers' report and recommendation does not address this statute or the 20-year drug sentence. Doc. 34-1 at 46.

Courts do not have power to tell BOP how to apply credit for time served. The Supreme Court has held "that § 3585(b) does not authorize a district court to compute the credit at sentencing." *United States v. Wilson*, 503 U.S. 329, 334 (1992). The Attorney General, not the courts, has the power to apply credits to an individual's sentence. *Id.* at 335. As the Supreme Court made clear: "the Attorney General, through the BOP, has the responsibility for administering the sentence. . . . Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant." *Id.*

Additionally, BOP's Computation Manual, through Program Statement 520.28,

instructs officials to apply the time-served credit in this case to both the 20-year drug sentence and the parole violation sentence so that "the prisoner [] receives full benefit for all time spent in jail prior to sentencing." Doc. 34-1 at 70. The Court concludes that BOP was not required by the magistrate's report and recommendation to apply a sentence credit to the parole violation sentence, let alone remove it from the 20-year drug sentence.

Given these conclusions, the Court cannot conclude on this record that Plaintiff is unable to make the showing required under the first element of qualified immunity, violation of a constitutional right. Defendants make no argument on the second element – that the right violated was clearly established. Doc. 54 at 9-11. The Court will not grant summary judgment for Chavez and Hoffman on this basis.

### B. Defendant Chavez's Liability.

Defendants also argue that Plaintiff cannot establish that Defendant Chavez, as a supervisor, is liable for violation of his constitutional right. The Supreme Court has made clear that supervisors may not be held liable for the constitutional violations of their subordinates under the doctrine of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, a Plaintiff must show that a defendant – even a supervisor – actually violated his constitutional rights. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. "Because *Iqbal* requires courts to apply an equivalent standard to supervisors and subordinates . . . a supervisor faces liability . . . only where 'it would be clear to a reasonable person that his conduct was unlawful in the situation confronted.'" *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) (quoting *Saucier*, 533 U.S. at 202).

In addition, liability under *Bivens* includes a causation requirement. Courts recognize that the elements of a *Bivens* claim are the same as the elements of a claim under 42 U.S.C. § 1983. *See Ashcroft*, 556 U.S. at 675 ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under [§ 1983].'"); *W. v. City of Mesa*, No. CV-12-00657-PHX-DGC, 2015 WL 1959467, at *5 (D. Ariz. Apr. 29, 2015) (noting that the elements for a

malicious prosecution claim brought under § 1983 are the same elements for a malicious prosecution claim brought under *Bivens*).  As the Ninth Circuit has made clear:  "Section 1983 has a causation requirement, with liability extending to those state officials who subject, or cause to be subjected, an individual to a deprivation of his federal rights." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc, quotation marks and citation omitted); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.") (brackets, quotation marks, and citation omitted).

As already noted, Defendants make a number of assertions in their statement of facts, supported by declarations or other documents, that Plaintiff does not controvert.  Doc. 55.  This is so even though Plaintiff was specifically advised that "you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in defendant's declarations and documents," and "show there is a genuine issue of fact for trial."  Doc. 56 at 1-2.  Plaintiff was also advised of his obligation to comply with Local Rule 56.1, which requires a controverting statement of facts.  *Id.* at 2.  Nor has Plaintiff claimed under Rule 56(d) that he needs additional discovery before the Court rules on summary judgment.  To the contrary, Plaintiff himself moves for summary judgment on the current factual record.  Doc. 59.  The Court accordingly will take Defendants' uncontroverted assertions of fact as true for purposes of this motion.  Fed. R. Civ. P. 56(e)(2).

The following facts are established: (1) Chavez was not involved in the BOP calculation that removed Plaintiff's time-served credits from his 20-year sentence; (2) Chavez did not supervise the staff that performed the calculation; (3) the calculation was performed by DSCC, not the Arizona facility supervised by Chavez; (4) BOP employee J. Hoffman, not Chavez, conducted the review of Plaintiff's sentence calculation in response to Plaintiff's appeal of his administrative claim; (5) Chavez had no authority to change the DSCC's computation; and (6) Chavez's role was to sign the

response to Plaintiff's appeal prepared by Hoffman.  Doc. 55, ¶¶ 20-22, 25.

These facts are insufficient to show that Chavez violated Plaintiff's constitutional rights.  They show that Chavez had no hand in the original actions that deprived Plaintiff of his time-served credit.  They show that Chavez signed the appeal response prepared by Hoffman, but not that Chavez knew the DSCC calculation was wrong, or otherwise knowingly participated in violating Plaintiff's constitutional rights.  Nor do they satisfy the requirement of causation:  Chavez was not the cause of Plaintiff's original loss of the time-served credit on his 20-year sentence, and had no authority to change that result when he reviewed Plaintiff's appeal more than a decade later.

Plaintiff makes this argument in opposition to Defendants' motion:

> [A] warden is required to work with competent staff, and to determine that he is working with competent staff, and that is where he becomes personally involved in the erroneous review of Plaintiff's sentencing computation.  He, like a captain of a ship, is responsible for ALL mishaps that occur on his ship.  For instance he should have demanded from his paralegals or advisors a plain language explanation of what was at issue.

Doc. 58 at 8.

There are several fundamental problems with this argument.  First, it is a classic statement of *respondeat superior* liability – the kind of liability that is not available in a *Bivens* claim.  It suggests that Chavez is liable because he is the warden and failed to surround himself with competent people.  That is not sufficient; the law requires Chavez's personal involvement in the constitutional violation.  *Iqbal*, 556 U.S. at 676.  Second, it fails to address the undisputed fact that Chavez, as warden of the Phoenix BOP facility, had no authority to change the sentence computation made by the DSCC.  Third, Plaintiff provides no legal or evidentiary support for his argument that Chavez violated his constitutional rights by failing to demand a plain language explanation from his subordinates.  He presents absolutely no evidence on this issue.

The Court concludes that Chavez's supervisory role as warden, including his signing of the response to Plaintiff's administrative appeal, is not sufficient to make him

personally liable for a violation of Plaintiff's constitutional rights in light of the undisputed facts of this case. Other courts have reached similar conclusions. *See Hendon v. Ramsey*, 06-CV-1060, 2009 WL 3151134, at *9 (S.D. Cal. Sept. 29, 2009) (granting summary judgment in favor of warden who signed report, but against whom the plaintiff provided no evidence of actual involvement in the injury-causing event); *MacDonald v. United States*, 11-CV-1088-IEG BLM, 2011 WL 6783327, at *10 (S.D. Cal. Dec. 23, 2011) (final signature on document authorizing plaintiff's removal from the United States not enough to show defendant's personal involvement in the wrongdoing for purposes of *Bivens* action); *Williams v. Huffman*, 11-CV-0638 GEB KJN, 2012 WL 5868348, at *8, *13 (E.D. Cal. Nov. 19, 2012) (granting summary judgment in favor of supervisor whose only connection to alleged constitutional violation was her signature on the final approval); *Porter v. Wegman*, 10-CV-1500 LJO DLB, 2015 WL 2345630, at *7 ("Liability may not be imposed under a theory of *respondeat superior*, and some causal connection between the conduct of each named defendant and the violation at issue must exist.").

The Court will grant summary judgment in favor of Defendant Chavez.

**VIII. Plaintiff's Motion for Summary Judgment.**

Plaintiff's motion is based entirely on his assertion that his sentence computation was incorrect, and that Defendants therefore must have acted with gross negligence and deliberate indifference. Doc. 59 at 5. But Plaintiff provides no evidence addressing Defendant Chavez's culpability, other than the arguments described above, which the Court has found insufficient. With respect to Defendant Hoffman, Plaintiff avers only that Hoffman refused to discuss the sentence calculation with him. Doc. 60, ¶ 8. This is not enough to establish that Hoffman acted with deliberate indifference or gross negligence (if those are in fact the correct culpability standards as Plaintiff claims), nor that Hoffman's actions caused Plaintiff's injury as required by the case law discussed above. The Court therefore will deny Plaintiff's motion for summary judgment.

## IX. Motion to Strike.

Plaintiff moves to strike Defendants' reply in support of their summary judgment motion because it is "fundamentally redundant, immaterial, and impertinent." Doc. 65 at 1. Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Johnson v. Cal. Medical Facility Health Servs.,* No. 2:14-CV-0580 KJN P, 2015 WL 4508734, at *6 (E.D. Cal. July 24, 2015). Plaintiff appears to disagree with Defendants' arguments, but provides no reason why the entire reply should be stricken. The Court will deny the motion.

**IT IS ORDERED:**

1. Plaintiff's motion to amend (Doc. 57) is **granted**. The complaint included with his motion (Doc. 57 at 3-19) is deemed the operative complaint in this case.
2. Defendants' motion for summary judgment (Doc. 54) is **granted** with respect to Defendants Chavez, Watts, and Johnson, and on Plaintiff's official capacity claim, and **denied** with respect to Defendant Hoffman.
3. Plaintiff's motion for summary judgment (Doc. 59) is **denied**.
4. Plaintiff's motion to strike (Doc. 65) is **denied**.
5. This case will proceed under the existing case management order (Doc. 52) against Defendant Hoffman.

Dated this 9th day of November, 2016.

_____
David G. Campbell
United States District Judge